## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **D.C.-D., D.C., P.S.-1, and P.S.-2**

**No. 23-646** (Berkeley County CC-02-2022-JA-132, CC-02-2022-JA-133, CC-02-2022-JA-134, and CC-02-2022-JA-135)

## MEMORANDUM DECISION

Petitioner Mother S.C.[1] appeals the Circuit Court of Berkeley County's October 5, 2023, order terminating her parental rights to D.C.-D., D.C., P.S.-1, and P.S.-2,[2] arguing that the circuit court erred by failing to adjudicate her as a battered parent and by finding that termination was the least restrictive dispositional alternative. Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

The DHS filed a petition in August 2022 alleging that M.S., the petitioner's boyfriend, and D.B.-S., the father of D.C., physically abused some of the children and that the petitioner engaged in excessive corporal punishment. The petition also alleged domestic violence in the home and that M.S. made threats to a Child Protective Services worker. The petition detailed several incidents of physical abuse and reports of bruises on the children. The petitioner claimed the children's injuries were due to falls or playground fights with other children.

At the direction of the circuit court, the petitioner completed a battered spouse evaluation in December 2022. During the evaluation, the petitioner denied any abuse by M.S. and described their relationship as "really good." She explained that her relationship with M.S. ended because she was forced to "put a no contact order on" M.S. because he was not the biological father of any

---

[1] The petitioner appears by counsel Jason T. Gain. The West Virginia Department of Human Services appears by counsel Attorney General Patrick Morrisey and Assistant Attorney General Katherine A. Campbell. Counsel Tracy Weese appears as the children's guardian ad litem. Respondent R.D. appears by counsel Pamela Jean Games-Neely.

[2] Additionally, pursuant to West Virginia Code § 5F-2-1a, the agency formerly known as the West Virginia Department of Health and Human Resources was terminated. It is now three separate agencies—the Department of Health Facilities, the Department of Health, and the Department of Human Services. *See* W. Va. Code § 5F-1-2. For purposes of abuse and neglect appeals, the agency is now the Department of Human Services ("DHS").

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

of the children. The petitioner denied physically abusing the children. The recommendations in the evaluation expressed concern at the petitioner's level of denial and opined that she would continue her cycle of abusive relationships until she understands the abuse and the effect it had on her and her children.

The court held two adjudicatory hearings in March 2023. Initially, the petitioner presented written stipulations to the court and admitted to failing to protect the children from abuse and neglect, contributing to the emotional abuse of the children, failing "to provide the necessary supervision of the children" and leaving them "exposed to someone that abused them," failing to protect the children from D.B.-S. and M.S., and employing inappropriate corporal punishment on D.C. However, the petitioner gave inconsistent testimony regarding her stipulations, so the parties proceeded to a contested adjudication. The DHS proffered that the forensic nurse who evaluated D.C., P.S.-1, and P.S.-2 would testify that D.C. and P.S.-1 had injuries consistent with non-accidental injury in multiple stages of healing, suggesting chronic abuse, and that the mother's explanations for the injuries were inadequate to explain the cause of the injuries. The petitioner stipulated to the forensic nurse's proffered testimony, and her reports were admitted into evidence. Next, the forensic interviewer who conducted interviews of D.C.-D. and D.C. testified regarding the children's disclosures during their Child Advocacy Center interviews. D.C.-D. disclosed that M.S. hit him in the stomach when he was "in trouble." The child explained that the petitioner was sometimes in the room when this happened and would not tell M.S. to stop unless the child was "nice" to her.

Then, the petitioner admitted to "tapping" D.C. on the face once to reprimand him. She testified that M.S. physically abused her and the children but gave inconsistent testimony regarding the abuse. She explained that M.S. was only in the home on weekends while she worked and that it must have been M.S. who abused the children because he was the only one watching them while she worked. However, she only acknowledged seeing bruises on D.C. one time but denied seeking any medical care for D.C. She denied ever witnessing M.S. hit D.C.-D. and denied ever seeing injuries on P.S.-1. She testified that she was a battered parent, explaining that she feared M.S., that M.S. controlled her transportation, and that M.S. would threaten her. However, she also explained that M.S. was only in her home on the weekends, that she sometimes borrowed his vehicle to transport herself places, and that she had her own cell phone. She testified that M.S. would beat her in front of the children but also testified that M.S. only began physically abusing her after the children were removed. The petitioner explained that she denied any abuse in her battered spouse evaluation because she feared M.S.

Finally, D.C.'s paternal grandmother testified to witnessing the petitioner hit D.C. on the face to reprimand him but reported no other instances of the petitioner striking the children. At the conclusion of the testimony, the circuit court found that the petitioner admitted to failing to supervise the children and leaving them exposed to someone who physically abused the children and that the petitioner failed to seek medical care after seeing bruises on D.C. and failed to investigate the cause of his injuries. The court also found that the petitioner's statements that she did not witness any physical abuse and that she did not see any other injuries on the children lacked credibility. Regarding a battered parent classification, the circuit court found that the petitioner knowingly allowed the abuse of her children by failing to take reasonable steps to protect her children and by defending the children's abuser. The court found that the petitioner had multiple

opportunities to protect the children from M.S., given her testimony regarding his absence during the week, her access to his vehicle, and her access to her cell phone. Based on her inconsistent statements minimizing M.S.'s abuse of her and the children, the court found that the petitioner was not a battered parent and did not otherwise suffer from "battered woman's syndrome" to such a degree that warranted the court finding that she had no responsibility for her inaction regarding the children's abuse.

The circuit court held a dispositional hearing in May 2024. The court heard testimony from a DHS worker, the petitioner, the petitioner's mother, D.C.-D.'s father, and two relatives of P.S.-1 and P.S.-2. The evidence established that the petitioner participated in services but failed to gain insight into her responsibility for the abuse and neglect and that she continually denied the full extent of the children's injuries and abuse. Ultimately, the court found there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that the children's best interests required termination. Accordingly, the court terminated the petitioner's parental rights to the children.[3] It is from this order that the petitioner appeals.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). First, the petitioner argues that the circuit court should have adjudicated her as a battered parent. However, our review of the record does not support a finding that the petitioner met the definition of a battered parent. Importantly, a battered parent is a parent who "has been adjudicated by the court to have not condoned the abuse or neglect." W. Va. Code § 49-1-201. The circuit court found evidence of the petitioner defending M.S., denying the children's disclosures of abuse, failing to seek required medical care for the children, and engaging in inappropriate corporal punishment herself. Further, given her conflicting testimony, the circuit court found the petitioner not credible, and we cannot disturb such credibility determinations on appeal. *See Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997) ("A reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations.").

In support of this argument, the petitioner contends that the court erred when it decided that "a woman could not be a battered parent simply because there were moments in time that she could have physically left the home or reported the abuse." This misstates the circuit court's findings at adjudication. Although the court found that the petitioner had multiple opportunities to protect the children from M.S. and failed to do so, it further based its ruling on the petitioner's minimization and denial of M.S.'s abuse, her admissions to inappropriate corporal punishment, and her failure to obtain medical care for the children. We cannot conclude that the circuit court's ruling that the petitioner was not a battered parent was clearly erroneous. *See* Syl. Pt. 1, in part, *In Interest of Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996) (holding that a reviewing court shall not set aside a circuit court's finding of fact unless the finding is clearly erroneous).

---

[3] The parental rights of the fathers of D.C., P.S.-1, and P.S.-2 were also terminated. The permanency plan for D.C., P.S.-1, and P.S.-2 is adoption in their current placements. D.C.-D. remains in the custody of his nonabusing father.

Next, the petitioner argues that the circuit court erred by finding that termination was the least restrictive alternative. However, we have held that although "the least restrictive alternative regarding parental rights to custody of a child . . . will be employed," circuit courts "are not required to exhaust every speculative possibility of parental improvement before terminating parental rights where it seems that the welfare of the [children] will be seriously threatened." Syl. Pt. 1, in part, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 144 (1980). The circuit court found that, although she received services, the petitioner continually denied the extent of the children's abuse and failed to take responsibility for her role in their abuse, despite her admissions to failing to seek necessary medical care and engaging in inappropriate corporal punishment. Given this refusal to acknowledge the conditions of abuse and neglect at issue, it is clear that the court had sufficient evidence upon which to find that there was no reasonable likelihood the petitioner could substantially correct them. *See In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re Charity H.*, 215 W. Va. 208, 217, 599 S.E.2d 631, 640 (2004)) (explaining that "failure to acknowledge the existence of the problem . . . results in making the problem untreatable"). The court also found that termination was in the best interests of the children, and circuit courts are permitted to terminate parental rights upon such findings. *See* W. Va. Code § 49-4-604(c)(6) (permitting termination of parental rights upon finding "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the welfare of the child).

For the foregoing reasons, we find no error in the decision of the circuit court, and its October 5, 2023, order is hereby affirmed.

Affirmed.

**ISSUED**: November 6, 2024

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice William R. Wooton

**DISSENTING:**

Justice John A. Hutchison
Justice C. Haley Bunn

Hutchison, Justice, and Bunn, Justice, dissenting:

We dissent to the majority's resolution of this case. We would have set this case for oral argument to thoroughly address the errors alleged in this appeal. Having reviewed the parties' briefs and the issues raised therein, we believe a formal opinion of this Court was warranted, not a memorandum decision. Accordingly, we respectfully dissent.